FEBRUARY TERM, 1875.            447

Raymond v. Post.

## RAYMOND vs. POST and others.

1. In examining a lien claim alleged to be a cloud upon title, the court will not admit extrinsic evidence in aid of the claim, but will examine the record evidence only.

2. Where a lien claim was filed after the commencement of a suit in this court to foreclose a mortgage which was on the land before the work was done or materials provided for which the lien was claimed, and the lien claimants were not made parties to the suit, and did not apply to be made parties, the claim was held to be cut off by virtue of the provisions of the "act relating to the Court of Chancery," (*Pamph. L.*, 1870, p. 40,) by sale under the foreclosure.

3. The act "to compel the determination of claims to real estate in certain cases, and to quiet the title to the same," (*Pamph. L.*, 1870, p. 20,) applies to a lien claim.

On final hearing on pleadings and proofs.

*Mr. S. B. Ransom,* for complainant.

*Mr. John Hopper,* for defendants.

THE CHANCELLOR.

The bill in this cause is filed for a perpetual injunction to restrain the defendants from selling, under an execution on a judgment under a mechanic's lien claim, certain premises, part of the Holsman or Santiago Park property, in Bergen county, purchased by the complainant at sheriff's sale, under a foreclosure in this court. It also prays that the judgment may be decreed to be no lien on the property described therein, and that the complainant's title to the premises described in the lien judgment may be quieted and cleared of all doubts and disputes concerning the same. The following are the facts on which the prayer of the bill is based : On the 25th of September, 1867, Francisco J. Montego was the owner of the Santiago Park property. It contained about one hundred and sixty-nine and a-half acres. There was a mansion-house upon it. On that day, Montego gave to George H. Whipple ten mortgages of that date upon the property, each for $10,000, with interest, to secure the payment of $100,000, with interest. These mortgages were duly registered in the Bergen county clerk's office, on the day of their date. Whipple assigned eight of them to George Griswold, on the 14th of October, 1867, and the latter assigned them to John N. Alsop Griswold on the 13th of May, 1868. Whipple, on the 14th of October, 1867, assigned another of the mortgages to the University of the City of New York, and on the same day assigned the remaining one to George Griswold, trustee. Subsequently to giving the mortgages to Whipple, Montego leased the premises by lease dated January 25th, 1869, to Isaac Herbert, for the term of four years from the 1st day of April, 1869. On the 12th of March, 1869, Montego gave to the firm of Thomas J. Owen & Co. a mortgage on the property, to secure the payment of $35,000, with interest. The mortgages to Whipple provided for the payment of the interest semi-annually, and that if any payment of interest should be unpaid for sixty days after it should fall due, the whole of the principal of the mortgage should thereupon be due and payable. The half year's

interest which fell due on the 25th of March, 1870, on the eight mortgages held by him, being unpaid for sixty days, John N. Alsop Griswold, on the 12th of July, 1870, filed his bill in this court to foreclose those mortgages, making Montego, the University of the City of New York, George Griswold, trustee, Thomas J. Owen & Co., and Herbert, parties defendant thereto. A decree *pro confesso* was entered in that suit against all the defendants, on the 20th of October, 1870, with a reference to a master, to report amounts and priorities. The master, on the 7th of November, 1870, reported that there was due to the complainant in the suit, $86,268.90 ; to George Griswold, trustee, $10,783.58 ; to the University of the City of New York, $11,133.58 ; and to Thomas J. Owen & Co., $42,350—in all, $150,536.06. On the 15th of November, 1870, a final decree was entered, confirming the report, and directing that the premises be sold by the sheriff of Bergen, to pay the encumbrances. Execution was issued accordingly, on the 20th of January, 1871. On the 6th of May, of that year, the sheriff sold the property under it to the complainant in this suit, for $142,000, which the complainant paid in cash. On the 23d of July, eleven days after the filing of the bill in the above cause, the defendants in this suit filed their claim of lien under the mechanics' lien law, against a building on the property, with a curtilage of about five acres. The lien claim states that the claim is for the payment of $2400, with interest thereon from July 30th, 1869, which debt, it declares, was contracted by Herbert, as builder, " for labor performed, and materials for the same, provided by them within one year last past, for, and in the erection of, an addition to said building, by doing all the work thereof, and furnishing the materials for the same." The "owner" was stated to be Montego, who, it was declared, had an estate in fee simple in the premises. Herbert was stated to be the person who contracted the debt, and for whom, and at whose request, the work and materials were done and furnished. A bill of particulars was given. The items ran from April 3d, 1869, to July 30th, 1869. The amount of the bill of

particulars was $5762.65—reduced, by credits, to $2400. None of the items in the bill, except the last, which is dated the 30th of July, 1869, are of a later date than June 12th. The items under date of July 30th, are two; one is three hundred and six feet of narrow flooring—$13.77; and the other, four hundred and ninety-three feet of narrow ceiling— $22.19; together, $35.96. The summons on this claim was issued, as before stated, on the 25th of July, 1870, more than a year after the date of all the items in the bill of particulars, except the last. Judgment in the suit was entered on the 12th of May, 1871, against Herbert, as builder, and the building and land described in the lien claim, for $2699.55, including costs. A special writ of *fieri facias* was at once issued on the judgment, directed to the sheriff of Bergen, who was about to sell the premises therein described under it, when the injunction issued in this cause, restraining him from so doing, was served upon him.

The question presented is whether the lien claimed by the defendants, is valid against the property therein described. It may be stated that the defendants insist that Montego's consent to the construction of the building on the premises, was obtained by them before they commenced the work. The first inquiry is as to whether the lien claim is valid, irrespective of the effect of the foreclosure upon it. There is no allegation either in the lien claim or in the declaration in the suit upon it, that the work was done and the materials furnished, pursuant to a contract. The declaration contains the common counts only, with a copy of the particulars contained in the lien claim. The defendants, indeed, in this suit, allege that the work was done under a contract, which they produce and prove. But in this controversy, the record alone must speak. The question here is between the lien claimants and a purchaser of the property, who at the time of his purchase, was ignorant of the existence of the lien claim. Extrinsic proof is not admissible to sustain the claim. The court must judge of the claim in such a controversy as this, by an inspection of it and of the record of the proceedings

upon it. *Associates of the Jersey Co.* v. *Davison*, 5 *Dutcher* 415; *Bement* v. *Trenton Locomotive Co.*, 2 *Vroom* 246; *S. C. in Error*, 3 *Vroom* 513. By the twelfth section of the mechanics' lien law, (*Nix. Dig.* 574,) it is enacted that no debt shall be a lien by virtue of that act, unless a claim is filed as thereinbefore provided within one year from the furnishing the materials or performing the labor for which such debt is due, and that such part of any claim filed, as may be for work or materials furnished more than one year before the filing of the same, shall not be recovered against the building or land by virtue of that act; nor shall any lien be enforced by virtue of that act, unless the summons in the suit for the purpose, shall be issued within one year from the date of the last work done or materials furnished in such claim; and the time of issuing such summons shall be endorsed on the claim by the clerk upon the scaling thereof, and if no such entry be made within one year from such last date, such lien shall be discharged. Judging this lien claim by its contents, the building and land were, when it was filed, discharged from the whole of the demand for which it was filed, except the last item, for all the rest of the materials were furnished and all the work done more than a year before the claim was filed. The defendants insist that inasmuch as the work was done and materials furnished by contract, for and in the erection and construction of a building, the year within which the claim was to be filed and summons issued, began to run only from the time when the building was completed. But, as before stated, extrinsic evidence that the work was done under contract, is inadmissible. Were it admitted, there is no proof in the cause on which reliance can be placed, as to when the building was finished. John P. Post, one of the defendants, is the only person who testified on the subject, and the only testimony he gave on this point was in his cross-examination. It is far from satisfactory. And again, it appears that the contract price of the work was to be $5081, while the amount of the demand for which the lien claim was filed, was $5762.65. Nearly $700 then, of this latter amount, was for extra work to

which the contract did not apply. The witness, Post, says, the lien claim was filed for work done in erecting the building under the contract, and extra work. The lien claim makes no discrimination between these. It is quite impossible to determine, by the dates of the bill of items which it contains, when the work under the contract was completed. The lien claim would, at most, be valid then, against the building and land, for only the items under date of July 30th, and costs. Those items amount to $35.96, and the costs were $61.40. Together, they amount to $97.36.

I have thus far considered the question of the validity of the lien claim, without reference to the effect of the foreclosure upon it. By the foreclosure, the lien claim against the building and land was cut off, and the land was sold under the foreclosure, discharged of that claim. The act of March 17th, 1870, " relating to the Court of Chancery," (*Pamph. L.*, 1870, *p.* 40,) provides that in any suit for the foreclosure of a mortgage upon, or which may relate to real or personal property in this state, all persons claiming any interest in, or an encumbrance or lien upon such property, by or through any conveyance, mortgage, assignment, lien, or any instrument which, by any provision of law, could be recorded, registered, entered or filed in any public office of this state, and which shall not be so recorded, registered, entered or filed at the filing of the bill in such suit, shall be bound by the proceedings in such suit, so far as the property is concerned, in the same manner as if he had been made a party to and appeared in such suit, and the decree therein made against him as one of the defendants therein ; but such person, on causing such conveyance, mortgage, assignment, lien claim or other instrument to be recorded, registered, entered or filed as provided by law, may cause himself to be made a party to such suit, by petition, in the same manner as provided by that act in the case of persons acquiring an interest in the subject matter of a suit after its commencement. The provisions of that act require diligence and action on the part of those who may have claims against mortgaged premises, which may be re-

Raymond v. Post.

corded, registered, entered or filed in any public office in this state, to protect their interest in those premises in case of proceedings for foreclosure. They are to put their deed or mortgage or other instrument under which they claim a title to or lien upon mortgaged real estate, on record. If their claim be by virtue of mortgage of chattels, it must be filed. If it be under a lien given by statute, they must file their lien claim. If, after a suit commenced, they desire to intervene to protect their rights, they must record, register or file the instrument under which they claim, and then, on application, may be admitted to defend. The necessity for this statutory provision is evident. In the case before us, mortgages to the amount of $135,000, of principal, were on record when the defendants in this suit entered into an agreement to erect the building. A foreclosure suit was commenced on one of them on the 12th of July, 1870. The building, as the defendants admit, had then been completed nearly a year. As the complainant insists, it had been completed more than a year. At any time in about twelve months prior to the beginning of the foreclosure suit, they might lawfully have filed their lien claim for their whole demand, for it had all been contracted. Had they done so, they would have been necessary parties to the bill. Not having done so, they must abide by the consequences of such neglect and of their neglect to apply to be made parties after they had filed their claim. The law of 1870, above referred to, was in force when the bill was filed, which was on the 12th of July, 1870.

This suit is brought under the act of March 2d, 1870, to compel the determination of claims to real estate in certain cases, and to quiet the title to the same. *Pamph. L.*, 1870, *p.* 20. The complainant is in peaceable possession of the premises in dispute. No issue has been requested. The defendants will be perpetually enjoined from selling under their judgment, and their lien claim and judgment will be decreed to be no encumbrance on the land in question.

The complainant is entitled to costs.